FILED
U.S. District Court
District of Kansas
08/14/2026
Clerk, U.S. District Court
By: SND Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

**BRIAN LACAMERA,**
Petitioner,

v.

**STATE OF KANSAS,**
Respondent.

**Case No. 26-3233-JWL**

# PETITIONER'S RESPONSE TO MEMORANDUM AND ORDER TO SHOW CAUSE

Petitioner Brian LaCamera, appearing pro se, respectfully submits this Response to the Court's Memorandum and Order to Show Cause and respectfully requests that the Petition not be dismissed.

Petitioner understands the Court's concerns. The Court has identified two principal barriers to the present § 2241 petition: (1) the doctrines of **Younger v. Harris** and **Ex parte Royall**, and (2) the general requirement that a state habeas petitioner exhaust available state remedies before seeking federal relief. The Court has also made clear that allegations of bad faith or harassment must be supported by more than conclusory assertions.

Petitioner therefore does not rely upon the allegation that state officials have acted improperly merely because Petitioner says so. This Response identifies the legal standards, the evidence presently available, the state proceedings in which Petitioner attempted to raise the federal issues, the obstacles encountered in doing so, and the specific records that can objectively verify the disputed facts.

Petitioner respectfully submits that the record presents at least a substantial basis to conclude that the state proceedings have not provided an adequate opportunity for meaningful adjudication of the federal constitutional claims and that extraordinary circumstances warrant retaining federal jurisdiction rather than dismissing the Petition at Rule 4 screening.

## I. THE COURT HAS CORRECTLY IDENTIFIED THE GOVERNING YOUNGER AND EX PARTE ROYALL PRINCIPLES, BUT THOSE PRINCIPLES REQUIRE AN ADEQUACY INQUIRY

Petitioner acknowledges the general rule.

In **Ex parte Royall, 117 U.S. 241, 251–52 (1886)**, the Supreme Court recognized federal habeas jurisdiction over a person held under state process while simultaneously explaining that federal intervention before completion of state proceedings is ordinarily discretionary and should be exercised only where special circumstances warrant it.

The Supreme Court later articulated the federalism and comity principles underlying **Younger v. Harris, 401 U.S. 37 (1971).**

But Younger is not an absolute prohibition against federal jurisdiction.

The Supreme Court has repeatedly recognized circumstances in which federal intervention may be appropriate, including bad faith, harassment, and other extraordinary circumstances involving irreparable injury. **Younger, 401 U.S. at 46, 53–54; Kugler v. Helfant, 421 U.S. 117, 123–25 (1975).**

More importantly for this case, Younger abstention requires more than the mere existence of a state prosecution.

The Supreme Court's three-part inquiry asks whether:

1. the state proceeding is ongoing;
2. the state proceeding implicates an important state interest; and
3. the state proceeding affords an adequate opportunity to present the federal constitutional claims.

**Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).**

The Tenth Circuit follows this framework. **Phelps v. Hamilton, 122 F.3d 885, 889 (10th Cir. 1997).**

The third requirement is critical here.

Petitioner's position is not that the existence of an ongoing state case automatically permits federal intervention.

His position is that the Court must determine whether these particular state proceedings have actually afforded him an **adequate opportunity** to present and obtain meaningful adjudication of the federal constitutional claims.

That question cannot be answered solely by pointing to the fact that state dockets remain open.

## II. SPRINT CONFIRMS THAT YOUNGER IS THE EXCEPTION, NOT A GENERAL RULE OF FEDERAL NONINTERVENTION

The Supreme Court's decision in **Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013)** further limits the scope of Younger.

Sprint explained that federal courts are ordinarily obligated to exercise the jurisdiction Congress has given them and that Younger is an exception, not a general rule that the existence of parallel state litigation automatically excludes federal jurisdiction.

Although Sprint involved a different type of proceeding, its instruction is directly relevant to the analysis: a federal court must first identify whether the proceeding falls within the narrow class of proceedings to which Younger applies and must not transform Younger into a general rule of abstention whenever state litigation exists.

Here, the Court has identified the pending Washington and Riley criminal proceedings as the principal basis for abstention. Petitioner does not dispute that criminal proceedings generally fall within the core of Younger.

Instead, Petitioner relies upon the recognized exceptions and, particularly, the third Middlesex requirement: whether there is actually an adequate opportunity to present and adjudicate the federal constitutional claims.

## III. THE TENTH CIRCUIT'S PHELPS TEST REQUIRES THE COURT TO CONSIDER THE ACTUAL EVIDENCE

The Tenth Circuit has explained that a petitioner seeking to overcome Younger on bad-faith or harassment grounds bears a substantial burden.

See **Phelps, 122 F.3d at 890–92.**

Phelps identifies three considerations relevant to bad faith or harassment:

1. whether the prosecution was frivolous or undertaken without a reasonable objective hope of success;
2. whether it was motivated by retaliation for the exercise of constitutional rights; and
3. whether the prosecution was conducted in a manner constituting harassment or abuse of prosecutorial discretion.

Id. at 890.

Petitioner recognizes that **mere allegations are insufficient**.

That is precisely why Petitioner submits the following evidence and identifies the government-controlled evidence that can independently verify the disputed events.

## IV. THE COURT SHOULD CONSIDER THE CUMULATIVE RECORD, NOT EACH IRREGULARITY IN ISOLATION

Petitioner does not contend that every discrepancy, standing alone, establishes bad faith.

The argument is cumulative.

The record includes:

- disputed arrest-warrant dates and returns;
- multiple warrant-recall documents;
- discrepancies concerning addresses;
- disputed failure-to-appear allegations;
- contemporaneous communications with the court and counsel;
- recordings concerning the failure-to-appear issue;
- repeated changes in appointed counsel;
- counsel's failure to adopt Petitioner's pro se filings;
- an emergency pro se motion seeking conflict counsel and a stay;
- evidence concerning counsel's personal review of government video;
- disputed descriptions of the underlying investigation;
- the October 7, 2025 Riley County DNA warrant;
- the later use of that warrant in January 2026;
- the identifying number RL-2026-MR-000018;
- Petitioner's public CaseSearch result showing no record under that number;
- disputed DNA collection while Petitioner was incarcerated;
- disputed handling of the DNA swabs;
- the continuing Washington County prosecution;
- the State's refusal to resolve Washington County while awaiting the Riley proceeding;
- the subsequent disappearance of Washington County criminal matters from the public CaseSearch portal; and
- the July 2026 state-court proceeding in which Petitioner was first permitted to proceed pro se and then, immediately after attempting to present his federal writ and request a stay, was repeatedly characterized as incompetent and subjected to additional restrictions.

Petitioner submits that this cumulative record is materially different from the conclusory allegations rejected in cases where a petitioner simply alleged that prosecutors were acting in bad faith.

## V. THE PARKER BODY-CAMERA RECORDING IS OBJECTIVE EVIDENCE, NOT MERELY PETITIONER'S WORD AGAINST THE STATE

One of the most important pieces of evidence concerns the incident involving Detective Parker.

Petitioner disputes the State's characterization that he barricaded himself inside his residence.

Petitioner does **not** claim that he personally viewed the particular body-camera recording at issue.

Instead, Petitioner states that his attorney personally viewed the recording.

The attorney subsequently communicated with Petitioner concerning what the recording showed.

Petitioner has preserved communications concerning counsel's review of that footage.

This distinction is important.

Petitioner is not asking the Court to accept a statement that "there is a video somewhere that proves me right."

Petitioner identifies an existing government-controlled recording that was personally viewed by his appointed attorney and that can objectively resolve the factual dispute.

The State therefore possesses evidence capable of testing the government's characterization of the incident.

Petitioner respectfully requests preservation and production of the complete recording, including metadata and all footage before, during, and after the incident.

If the recording establishes the facts described by Petitioner, that is objective evidence.

If it does not, the recording will establish that as well.

Either way, the recording is superior to resolving the dispute through competing assertions.

## VI. THE WASHINGTON COUNTY DISTRICT ATTORNEY AND LAW ENFORCEMENT POSSESS OR CONTROL MATERIAL VIDEO EVIDENCE

Petitioner further maintains that the Washington County prosecution and/or law-enforcement agencies possess or control relevant video evidence.

The evidence includes body-camera footage concerning the underlying events and the Parker incident.

Petitioner asks the Court to distinguish between a case in which a petitioner merely alleges that an officer lied and a case in which the petitioner identifies a specific government recording capable of resolving the dispute.

Here, the evidence is objectively testable.

Petitioner therefore requests preservation of:

1. all body-camera recordings;
2. all dash-camera or vehicle-camera recordings;
3. dispatch recordings;
4. CAD records;
5. incident reports;
6. investigative reports;
7. evidence logs;
8. metadata showing creation and preservation of recordings; and

9. records identifying when the footage was accessed, copied, provided to counsel, or otherwise handled.

## VII. THE PARKER/WESLEY EVIDENCE IS RELEVANT TO WHETHER THE STATE FORUM CAN MEANINGFULLY RESOLVE THE FEDERAL CLAIMS

The relevance of this evidence to Younger is not simply that Petitioner believes the evidence helps him.

The relevance is that the government possesses the best evidence capable of resolving the factual dispute.

Where the state proceeding has access to the same evidence and provides a genuine opportunity to litigate the constitutional issue, Younger ordinarily has substantial force.

But where the petitioner repeatedly attempts to present constitutional claims while material government-controlled evidence is not meaningfully brought before the tribunal, the adequacy inquiry becomes different.

Petitioner therefore asks this Court to consider whether he has actually been afforded the opportunity that Middlesex requires.

## VIII. THE DETECTIVE WESLEY INVESTIGATION CONTAINS SPECIFIC FACTUAL ISSUES CAPABLE OF OBJECTIVE VERIFICATION

Petitioner has identified specific discrepancies concerning Detective Wesley's investigation.

One concerns the beer steins.

Petitioner maintains that the investigative account simultaneously treated the beer steins as missing while describing circumstances in which Petitioner had offered the same items.

Petitioner does not ask the Court to decide this issue based solely on his characterization.

He asks the Court to compare:

- Wesley's affidavit;
- investigative reports;
- photographs;
- property records;
- communications;
- statements attributed to Petitioner; and
- any recordings concerning the property.

Likewise, Petitioner has identified issues concerning the storage facility, its location, access, and advertised surveillance.

Petitioner states that the storage facility was approximately fifteen yards from a tobacco shop that he regularly visited and that the facility advertised twenty-four-hour surveillance.

If those facts are accurate, they identify independent evidence that could corroborate or contradict the State's investigative narrative.

The existence of readily identifiable independent evidence is therefore relevant to whether the investigation can be objectively tested rather than resolved solely through credibility determinations.

## IX. THE RILEY COUNTY DNA WARRANT REQUIRES REVIEW OF THE ORIGINAL COURT FILE

Petitioner challenges the October 7, 2025 Riley County DNA warrant.

The warrant presented to Petitioner and later relied upon in January 2026 bears the identifying number **RL-2026-MR-000018.**

Petitioner searched the Kansas Judicial Branch CaseSearch system for that exact number with Riley County selected.

The search returned **"No records found."**

Petitioner recognizes that the public portal is not itself the official court record.

Therefore, Petitioner does not ask this Court to treat the portal search as conclusive proof that no court file exists.

Instead, the discrepancy establishes a specific factual question that can be resolved by the original court records.

Petitioner respectfully requests review or preservation of:

1. the original warrant application;
2. the affidavit;
3. the judicial authorization;
4. the warrant itself;
5. the case-number assignment;
6. the electronic filing record;
7. the filing timestamp;
8. the return;
9. the January 2026 execution documentation;
10. the chain-of-custody records; and
11. the electronic metadata associated with the warrant.

The question is straightforward:

**What court file authorized the October 7, 2025 warrant, when was that file created, what case number was assigned to it, and how was the warrant subsequently used in January 2026?**

That question is objectively answerable.

## X. THE JANUARY DNA COLLECTION PRESENTS A FOURTH-AMENDMENT ISSUE THAT DEPENDS UPON THE VALIDITY AND EXECUTION OF THE WARRANT

Petitioner states that while incarcerated in Washington County, Detective Wesley and other officers came to his cell to collect DNA.

Petitioner maintains that he did not consent to the search.

He states that he expressly refused consent but did not physically resist.

Petitioner states that he was told of serious consequences if he did not cooperate and that the officers proceeded to collect the DNA.

Petitioner further states that he instructed the officers to activate their body cameras and preserve the footage.

Petitioner maintains that after collection the swabs were not immediately sealed in the manner Petitioner expected for biological evidence and were instead placed into a black binder.

These allegations present separate questions concerning:

1. the validity of the warrant;
2. whether the warrant was active and executable;
3. whether the collection complied with the warrant;
4. whether the collection was consensual;
5. whether coercion was used;
6. whether body-camera footage exists; and
7. whether chain-of-custody requirements were satisfied.

Petitioner therefore asks the Court to preserve, rather than summarily disregard, the underlying evidence.

## XI. THE JUNE 2025 WARRANT AND RECALL HISTORY REQUIRES EXAMINATION OF THE ORIGINAL RECORD

The Leavenworth docket itself establishes a sequence of warrant events that Petitioner disputes.

The court's docket identifies:

- June 4, 2025 — Complaint/Information;
- June 5, 2025 — two separate Orders Withdrawing Arrest Warrant;
- June 6, 2025 — Arrest Warrant Recalled;
- June 11, 2025 — Arrest Warrant Served;
- June 17, 2025 — Arrest Warrant Served.

Petitioner's challenge is therefore not based on the proposition that "there was a warrant problem."

The docket itself demonstrates multiple warrant events.

Petitioner contends that the dates, returns, addresses, service records, and recall documents must be compared against the actual physical and electronic records.

The Court should therefore consider the original warrants, recall orders, returns, service records, and filing timestamps.

## XII. PETITIONER'S FAILURE-TO-APPEAR CLAIM IS SUPPORTED BY CONTEMPORANEOUS COMMUNICATIONS

Petitioner disputes the State's characterization that he simply failed to appear.

Petitioner maintains that he contacted the court and counsel concerning his inability to attend and that contemporaneous communications and recordings exist.

Petitioner has preserved the communications concerning the September 19, 2025 telephone calls and has provided them to counsel.

This is important because the question is not simply whether Petitioner physically appeared.

The constitutional and procedural significance depends upon what occurred before the hearing, what notice was given, what the court knew, and whether the resulting warrant or bond action accurately characterized Petitioner's conduct.

Petitioner therefore asks the Court to consider the actual telephone records, recordings, emails, journal entries, and attorney communications.

## XIII. THE APPOINTMENT-OF-COUNSEL HISTORY DEMONSTRATES THE DIFFICULTY PETITIONER ENCOUNTERED IN PRESENTING HIS CLAIMS

The Leavenworth record demonstrates repeated changes in counsel.

On November 26, 2025, the court entered an Order Appointing Private Counsel or Public Defender appointing Joseph Shane Rockey. The order was electronically signed and filed at 10:38:46 a.m. on November 26, 2025, and scheduled a December 3, 2025 hearing.

Petitioner states that he did not meet that attorney until the December 3 hearing and that the attorney had not discussed the substance of Petitioner's November 26 motion with him before that motion was dismissed.

Petitioner subsequently states that he did not hear from counsel again until January 7, 2026, when counsel contacted him approximately two hours before court concerning a plea.

Petitioner states that he expressly rejected the plea immediately after the hearing because he would not admit conduct he believed he had not committed.

The docket subsequently reflects the plea and later proceedings.

The record further shows that on February 4, 2026, Rockey was permitted to withdraw and James Floyd was appointed.

On February 6, 2026, Petitioner filed an **Emergency Motion for Appointment of Outside Conflict Counsel and Stay of Proceedings (pro se)**.

On February 20, 2026, that pro se emergency motion was withdrawn, and counsel stated that an amended motion to withdraw the plea would be filed.

The March 11 journal entry likewise reflects that counsel would proceed with an amended motion rather than adopting Petitioner's pro se motion.

Petitioner submits that these events are relevant to whether the federal constitutional claims have actually been afforded a meaningful opportunity for presentation.

## XIV. PETITIONER'S SELF-REPRESENTATION REQUEST IN RILEY COUNTY IS ALSO RELEVANT

The Sixth Amendment independently protects a criminal defendant's right to self-representation when the defendant knowingly and intelligently elects to proceed without counsel.

**Faretta v. California, 422 U.S. 806, 835–36 (1975).**

Kansas follows Faretta.

See **State v. Collins, 257 Kan. 830, 842–44 (1995); State v. Vann, 280 Kan. 782, 802–03 (2006).**

The Kansas Supreme Court has explained that a defendant who clearly and unequivocally requests self-representation is entitled to proceed after a knowing and intelligent waiver, and that denial of the right is not subject to harmless-error treatment. **Vann, 280 Kan. at 802-03.**

Petitioner states that Judge McNish conducted the required inquiry, asked Petitioner about his understanding of the proceedings and the seriousness of the charges, and then granted Petitioner permission to proceed pro se.

Petitioner then asked to address the court concerning his newly filed federal writ and requested that the state court stay its proceedings pending the federal court's consideration.

Petitioner states that immediately after he identified the writ and produced the file-stamped copy, the court interrupted him and repeatedly characterized him as incompetent.

Petitioner further states that restrictive bond-supervision conditions were imposed, including conditions concerning firearms.

Petitioner does not ask this Court to decide from his description alone whether the state judge violated Faretta.

Petitioner asks the Court to examine the recording/transcript and journal entry of the hearing.

The timing is relevant to the adequacy inquiry.

If the state court first determines that Petitioner is competent to represent himself and grants pro se status, but then, immediately after Petitioner attempts to place a federal habeas filing and request for a stay before that same court, reverses course and repeatedly characterizes him as incompetent, the event is objectively relevant to whether Petitioner has a meaningful opportunity to present federal constitutional claims.

## XV. THE NO-CONTACT ORDER REQUEST IS RELEVANT TO THE SEQUENCE OF EVENTS

Petitioner further states that after the court's ruling concerning his pro se status and after he attempted to address the federal writ, the prosecutor turned to the complaining witnesses and asked whether they had a request.

Petitioner states that the witnesses first asked whether they could speak, then were asked whether they wanted a no-contact order, and answered affirmatively.

Petitioner contends that this occurred immediately after the federal filing and his attempt to present it.

Again, Petitioner does not ask the federal court to accept his characterization that the witnesses were "coached" as a proven fact without examining the recording.

The relevant point is the sequence.

The hearing was recorded.

The Court can determine exactly what was said.

Petitioner therefore requests consideration of the recording/transcript rather than dismissal of the allegation as a conclusory assertion.

## XVI. THE WASHINGTON COUNTY PROCEEDING PRESENTS A CONTINUING SPEEDY-TRIAL ISSUE

Petitioner's Washington County case is **WS-2026-CR-000002**.

Petitioner's arraignment occurred on January 27, 2026.

The next hearing is currently scheduled for September 29, 2026.

Petitioner recognizes that the mere passage of time does not automatically establish a Kansas speedy-trial violation because statutory exclusions may apply.

Petitioner therefore does not ask this Court simply to count calendar days.

Petitioner asks that the State identify each period it claims is excluded and the legal basis for each exclusion.

The issue is particularly important because Petitioner states that at the most recent Washington County proceeding the prosecutor declined to dismiss the case and stated that she wanted to see what happened in the Riley County case before deciding whether to dismiss Washington County.

If the State is deliberately continuing one prosecution while waiting for the outcome of another prosecution involving the same Petitioner, the factual reason for that delay is relevant to the speedy-trial analysis and to the broader question of whether the State is using multiple proceedings in a coordinated manner.

Petitioner requests the transcript or recording of that hearing.

## XVII. THE RECENT DISAPPEARANCE OF WASHINGTON COUNTY CASES FROM THE PUBLIC PORTAL IS EVIDENCE OF A RECORD-ACCESS DISCREPANCY, NOT PROOF OF WHO CAUSED IT

Petitioner has monitored the Kansas Judicial Branch public CaseSearch system daily for approximately eighteen months.

He has preserved approximately 3,500 screenshots and saved records concerning his proceedings in Leavenworth, Washington, Riley, and Clay Counties.

Petitioner states that approximately nine days before this Response, every Washington County criminal case associated with his name—including the currently pending case—ceased appearing through the public CaseSearch portal.

Petitioner has personally observed the portal repeatedly over approximately eighteen months and therefore has personal knowledge that the information had previously been accessible.

Petitioner does not ask this Court to assume that a clerk, judge, prosecutor, or other state actor intentionally deleted or concealed the records.

The narrower fact is that information previously accessible through the public portal subsequently ceased to appear.

That fact can be tested.

Petitioner's preserved screenshots can be compared against the present portal.

The official court records can then be compared against both.

Petitioner therefore asks the Court to order preservation of the official docket and electronic filing history and, if necessary, obtain the underlying metadata showing when public-access status changed.

This distinction is important because the public portal is not the official court record.

Petitioner's screenshots prove what the public system displayed at the time they were captured.

The official record can establish what was actually filed.

The electronic metadata can establish when and how public access changed.

## XVIII. THE PUBLIC-PORTAL EVIDENCE IS RELEVANT TO THE ADEQUATE-OPPORTUNITY QUESTION

Middlesex asks whether the state proceeding provides an adequate opportunity to present federal constitutional claims.

Petitioner submits that an adequate forum necessarily requires a meaningful ability to identify, preserve, and present the evidence necessary to support those claims.

Petitioner has preserved thousands of screenshots because he repeatedly observed changes in the public record.

He therefore asks the Court to consider the difference between:

- an ordinary public docket that remains available for review; and
- a record in which Petitioner can demonstrate that information previously displayed is no longer publicly accessible while the underlying proceedings remain active.

Petitioner is not claiming that a change in public-access status alone proves bad faith.

He submits that it is one part of the cumulative evidence supporting the need for preservation and judicial review.

## XIX. THE STATE'S OWN RECORD DEMONSTRATES THAT PETITIONER HAS ATTEMPTED TO USE STATE PROCEDURES

Petitioner has not ignored the state courts.

He has repeatedly attempted to litigate his claims there.

The record demonstrates:

- motions filed pro se;
- appointed counsel;
- requests concerning counsel;
- motions to withdraw the plea;
- an emergency pro se motion for outside conflict counsel;
- an emergency request for a stay;
- hearings concerning the plea;
- an appeal from the Leavenworth judgment;
- ongoing litigation in Washington County;
- ongoing litigation in Riley County; and
- attempts to place federal constitutional issues before the state court.

The Leavenworth docket confirms Petitioner's April 1, 2026 Notice of Appeal remains part of the procedural history identified by the federal Order.

Petitioner therefore respectfully submits that his situation is not analogous to a petitioner who simply bypassed the state courts and immediately sought federal intervention.

## XX. EXHAUSTION IS A GENERAL RULE, BUT THE TENTH CIRCUIT RECOGNIZES FUTILITY AND INADEQUACY

Petitioner acknowledges that exhaustion generally applies to § 2241 petitions.

The Tenth Circuit has held that a habeas petitioner generally must exhaust state remedies whether proceeding under § 2241 or § 2254.

See **Montez v. McKinna, 208 F.3d 862, 866 (10th Cir. 2000); Wilson v. Jones, 430 F.3d 1113, 1118 (10th Cir. 2005); Robinson v. Rice, 900 F.3d 1195, 1199–1200 (10th Cir. 2018).**

Petitioner does not ask the Court to disregard that rule.

But exhaustion is not an absolute requirement where state corrective procedures are unavailable or futile.

The Tenth Circuit has recognized that exhaustion is satisfied or excused where there is **no opportunity to obtain redress in state court or where the corrective process is so clearly deficient as to render an effort to obtain relief futile.**

See **Harmon v. Booher, 22 F. App'x 757, 759 (10th Cir. 2000).**

That is the issue Petitioner asks the Court to decide.

The question is not whether Kansas courts theoretically possess jurisdiction to hear constitutional claims.

They plainly do.

The question is whether, **under the actual circumstances documented here**, Petitioner has been afforded a meaningful opportunity to present the federal claims and obtain adjudication of the evidence supporting them.

## XXI. BRADEN RECOGNIZES THAT § 2241 CAN ADDRESS A PRESENT SPEEDY-TRIAL CLAIM

The Supreme Court's decision in **Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 489–93 (1973)** is particularly important to Petitioner's speedy-trial claim.

Braden recognized that § 2241 can be used by a state pretrial detainee to seek relief concerning a present constitutional denial of a speedy trial, while also requiring exhaustion of available state remedies.

Petitioner does not rely upon Braden as eliminating exhaustion.

He relies upon it to demonstrate that a present speedy-trial claim is not categorically outside § 2241 merely because the state prosecution has not yet ended.

The Washington County speedy-trial claim therefore must be analyzed according to the actual state remedies available to Petitioner and the actual exclusions claimed by the State.

## XXII. DOLACK IS PARTICULARLY RELEVANT BECAUSE IT INVOLVED A KANSAS STATE PROSECUTION

The Tenth Circuit's decision in **Dolack v. Allenbrand, 548 F.2d 891 (10th Cir. 1977)** is directly relevant because it involved a Kansas state prosecution and a federal habeas challenge.

Dolack recognized the relationship between Younger and Ex parte Royall and explained that federal habeas ordinarily cannot be used simply to derail a pending state prosecution.

But Dolack also demonstrates why the Court must examine the nature of the constitutional claim and the circumstances presented rather than treating Younger as an automatic jurisdictional dismissal.

Petitioner accepts the general rule stated in Dolack.

His argument is that the evidence in this case presents the very question Dolack leaves open: whether special circumstances exist and whether the state process is actually providing the opportunity for meaningful adjudication.

## XXIII. THE STATE PROCEEDINGS SHOULD NOT BE TREATED AS AN ADEQUATE FORUM MERELY BECAUSE PETITIONER CAN TECHNICALLY FILE ANOTHER MOTION

Petitioner respectfully submits that there is a difference between **theoretical access** and **meaningful opportunity**.

A defendant may technically be permitted to file a motion while simultaneously encountering circumstances that prevent the constitutional issue from being meaningfully presented.

Here, Petitioner has repeatedly filed motions.

Counsel has sometimes not adopted them.

Counsel has changed.

Petitioner has attempted to proceed pro se.

Petitioner has attempted to present the federal writ to the state court.

Petitioner states that he was interrupted immediately after identifying the writ and seeking a stay.

Petitioner has identified government-controlled evidence that he says his own counsel personally viewed but that has not been placed before the court in the form necessary to resolve the dispute.

These circumstances are relevant to the Middlesex adequacy inquiry.

## XXIV. THE COURT SHOULD NOT REQUIRE PETITIONER TO PROVE THE CONTENTS OF GOVERNMENT-CONTROLLED EVIDENCE THAT HE DOES NOT POSSESS

Petitioner recognizes that Phelps requires evidence beyond bare allegations.

He therefore identifies evidence that is:

- already preserved by Petitioner;
- contained in state court files;
- contained in recordings;
- possessed by law enforcement;
- possessed by the prosecution;
- possessed by appointed counsel; or
- objectively verifiable through electronic filing records.

Where Petitioner has the evidence, he will submit it.

Where the State possesses the evidence, Petitioner asks for preservation and production.

That is not an attempt to shift Petitioner's burden to Respondent.

It is an attempt to ensure that the federal court evaluates whether the extraordinary-circumstances showing exists based on evidence rather than on an information asymmetry in which the State controls the recordings and original electronic records.

## XXV. PETITIONER'S CASE IS NOT BASED UPON A SINGLE ALLEGED ERROR

The Court is respectfully asked to consider the pattern.

The evidence concerns:

### A. Warrant chronology

The Leavenworth docket contains multiple warrant withdrawals, recalls, and returns during June 2025.

### B. Failure-to-appear evidence

Petitioner possesses contemporaneous communications and recordings concerning his efforts to contact the court and counsel.

### C. Counsel history

The court appointed Rockey on November 26, 2025; subsequently Rockey was permitted to withdraw and Floyd was appointed; Petitioner then filed a pro se emergency motion for outside conflict counsel and a stay.

### D. Government-controlled video

Petitioner identifies body-camera evidence concerning Parker that his attorney personally viewed.

### E. Riley warrant

Petitioner identifies the October 7, 2025 warrant and the later January execution, together with the RL-2026-MR-000018 identifier and the public CaseSearch result.

### F. DNA collection

Petitioner disputes consent, execution, and evidence handling and identifies body-camera and chain-of-custody evidence capable of resolving those questions.

### G. Washington speedy trial

Petitioner identifies the January 27 arraignment, the September 29 setting, the claimed State decision to await Riley County, and the statutory calculation requiring identification of exclusions.

### H. State response to federal filing

Petitioner identifies the July 2026 state-court proceeding in which he was granted pro se status and then, immediately after attempting to present his federal writ and request a stay, was repeatedly characterized as incompetent and subjected to additional restrictions.

### I. Public record changes

Petitioner has approximately 3,500 preserved screenshots and files documenting the public portal over approximately eighteen months and recently observed the disappearance of Washington County criminal matters from public CaseSearch.

The Court does not have to accept every conclusion Petitioner draws from these facts.

It does, however, have a sufficient factual basis to conclude that the allegations are not merely unsupported assertions and that the underlying evidence warrants consideration.

## XXVI. THE COURT SHOULD CONSIDER THE RECORD BEFORE CONCLUDING THAT THE BAD-FAITH EXCEPTION IS UNAVAILABLE

Petitioner understands the language of **Phelps** requiring more than allegations.

He respectfully submits that the proper response is therefore not dismissal merely because Petitioner is pro se and has made serious allegations.

The appropriate inquiry is whether the evidence identified by Petitioner, taken as a whole, is sufficient to require further consideration of the extraordinary-circumstances question.

Petitioner has identified:

- specific dates;
- specific warrants;
- specific docket entries;
- specific attorneys;
- specific recordings;
- specific communications;
- specific case numbers;
- specific filing discrepancies;
- specific court proceedings;
- specific government-controlled evidence; and
- specific events immediately following Petitioner's attempted presentation of the federal writ.

Those are not abstract accusations.

They are factual propositions capable of documentary verification.

## XXVII. THE JULY 2026 PRO SE HEARING IS ESPECIALLY IMPORTANT TO THE ADEQUATE-OPPORTUNITY QUESTION

The Court should obtain the recording or transcript of the July 2026 hearing.

Petitioner states that the sequence was:

1. Judge McNish questioned Petitioner concerning his legal experience and understanding;
2. Petitioner answered the questions;
3. the judge determined that Petitioner could proceed pro se;
4. Petitioner asked to address the court;
5. Petitioner respectfully informed the court that he had filed a federal writ and asked the state court to stay proceedings pending the federal court's decision;
6. Petitioner presented the file-stamped copy;
7. the judge interrupted Petitioner and repeatedly called him incompetent;
8. the court imposed additional bond-supervision conditions;
9. the prosecutor immediately asked the complaining witnesses whether they wanted a no-contact order; and
10. the no-contact restriction was imposed.

If the recording confirms that sequence, it is powerful evidence concerning the practical ability of Petitioner to present a federal constitutional claim in the state proceeding.

The issue is not whether the judge was entitled to question Petitioner's competence.

The issue is whether the determination of competence changed immediately after Petitioner attempted to invoke federal habeas review and request a stay.

That is an objectively verifiable question.

## XXVIII. PETITIONER DOES NOT ASK THIS COURT TO DECIDE THE ULTIMATE MERITS OF EVERY STATE-COURT DISPUTE AT THIS STAGE

This Response is not asking the Court to conduct a full trial concerning every alleged constitutional violation.

The immediate issue is whether the Petition should be dismissed at screening.

Petitioner respectfully submits that dismissal is premature because the record contains specific evidence supporting the allegations and because the state proceedings themselves present the circumstances underlying the federal constitutional claims.

Petitioner therefore asks the Court to retain the Petition sufficiently to determine:

1. whether Younger applies to each claim;
2. whether an adequate state forum actually exists for each claim;
3. whether the bad-faith/harassment exception is implicated;
4. whether the extraordinary-circumstances exception applies;
5. whether exhaustion is excused because the corrective process is unavailable or futile;
6. whether the Washington speedy-trial claim falls within the type of § 2241 claim recognized by Braden; and
7. whether additional factual development or preservation of government-controlled evidence is necessary.

## XXIX. REQUEST FOR LIMITED PRESERVATION AND EVIDENTIARY REVIEW

Petitioner respectfully requests preservation of:

1. all Parker body-camera footage;
2. all Wesley body-camera footage;
3. all Washington County Sheriff's body-camera footage concerning Petitioner's arrests and DNA collection;
4. all relevant dispatch and CAD records;
5. all recordings of the July 2026 McNish hearing;
6. all recordings concerning the no-contact-order request;
7. the original Riley County October 7, 2025 warrant file;
8. all electronic filing metadata for RL-2026-MR-000018;

9. the January 2026 DNA collection records;
10. chain-of-custody records for Petitioner's DNA;
11. all warrant applications and returns;
12. all warrant-recall orders;
13. all relevant court docket histories;
14. storage-facility surveillance and access records;
15. investigative reports concerning the beer steins;
16. records concerning the alleged barricading;
17. communications concerning Petitioner's wife's presence;
18. records provided to or reviewed by appointed counsel; and
19. all electronic records necessary to determine when public CaseSearch information became unavailable.

## XXX. RELIEF REQUESTED

For the reasons stated above, Petitioner respectfully requests that the Court:

1. **Find that Petitioner has shown good cause in response to the Order to Show Cause;**

2. **Decline to dismiss the Petition at Rule 4 screening;**

3. Apply the Younger analysis separately to the Leavenworth, Washington, and Riley proceedings;

4. Determine whether each proceeding actually provides an adequate opportunity to present the federal constitutional claims;

5. Consider the bad-faith, harassment, retaliation, and extraordinary-circumstances exceptions recognized in Younger, Phelps, Amanatullah, Brown, and Kugler;

6. Consider the Supreme Court's limitation of Younger in Sprint;

7. Consider Ex parte Royall's recognition that special circumstances may justify federal habeas intervention before completion of state proceedings;

8. Consider Braden with respect to Petitioner's present speedy-trial claim;

9. Consider the Tenth Circuit's futility/inadequacy exception to exhaustion recognized in Harmon;

10. Consider the evidence concerning Petitioner's repeated attempts to present his federal claims through state proceedings and appointed counsel;

11. Consider the July 2026 pro se hearing and the events immediately following Petitioner's presentation of the federal writ;

12. Preserve the government-controlled video and electronic evidence identified above;

13. Permit Petitioner to supplement the record with the relevant recordings, screenshots, warrants, returns, journal entries, emails, and other primary evidence;

14. If the Court determines that additional factual development is necessary before resolving abstention or exhaustion, permit such development rather than dismissing the action outright; and

15. Grant such other relief as the Court deems just and proper.

# CONCLUSION

Petitioner understands that federal courts must respect the authority of state courts.

He is not asking this Court to disregard Younger, Ex parte Royall, or the exhaustion doctrine.

He is asking the Court to **apply those doctrines to the actual record rather than to a presumption that the state forum is adequate simply because state cases remain pending.**

The Supreme Court has made adequacy of the state forum an express part of the Younger analysis. **Middlesex, 457 U.S. at 432.**

The Tenth Circuit has expressly recognized extraordinary circumstances, bad faith, retaliation, and harassment as potential exceptions, while requiring evidence beyond bare allegations. **Phelps, 122 F.3d at 889–92.**

The Tenth Circuit has also recognized that exhaustion may be excused where there is no meaningful opportunity for redress or where the corrective process is so deficient that pursuing it would be futile. **Harmon, 22 F. App'x at 759.**

Petitioner has attempted to use the state process.

He has filed motions.

He has attempted to proceed through appointed counsel.

He has attempted to proceed pro se.

He has attempted to raise constitutional claims.

He has filed an appeal.

He has attempted to place his federal writ before the state court.

He has identified government-controlled recordings and records capable of resolving central factual disputes.

And he has preserved contemporaneous evidence of the public court record over approximately eighteen months.

Petitioner respectfully submits that these circumstances provide good cause for the Court to retain the Petition and examine whether the state process has actually afforded the meaningful opportunity required by the Constitution and by the Supreme Court's Younger jurisprudence.

The Petition should therefore not be dismissed at this stage.

Respectfully submitted,

**Brian LaCamera**
Petitioner, Pro Se

Date: **August 14, 2026**