FILED
U.S. District Court
District of Kansas
09/02/0226
Clerk, U.S. District Court
By: SND Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**BRIAN LACAMERA,**

**Petitioner,**

**v.** **CASE NO. 26-3233-JWL**

**STATE OF KANSAS,**

**Respondent.**

**MEMORANDUM AND ORDER**

This is a pro se petition for writ of habeas corpus (Doc. 1) filed under 28 U.S.C. § 2241 by Petitioner Brian LaCamera. At the time of filing, Petitioner appeared to be on probation for one criminal case and released on bond in other cases.[1] The Court granted Petitioner leave to proceed in forma pauperis. The Court screened the Petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, and entered a Memorandum and Order (Doc. 3) ("M&O") finding that the Petition is subject to dismissal and ordering Petitioner to show good cause why this action should not be dismissed. This matter is before the Court on Petitioner's response (Doc. 4) and Emergency Motion for Immediate Temporary Stay of Probation Enforcement (Doc. 5).

## I. M&O Requiring Petitioner to Show Good Cause

The Court found in the M&O that Petitioner's claims relate to three ongoing state criminal

[1] "A petitioner may be found to be 'in custody' for purposes of the habeas corpus act in situations where the petitioner is not physically incarcerated." *Johnson v. Kansas*, 2019 WL 3765611, at *1 (D. Kan. 2019). "The custody requirement can be met where there is a severe restraint on a person's liberty imposed because of the individual's criminal conviction." *Id*. (citing *Hensley v. Mun. Court*, 411 U.S. 345, 351 (1973)). "Hence, courts have found petitioners to be 'in custody' when they are on parole or probation, or even released on their own recognizance pending execution of sentence, due to the significant restraints on liberty." *Id*. (citations omitted); *see also Brooks v. Hanson*, 763 F. App'x 750, 751–52 (10th Cir. 2019) (unpublished) (finding that custody "encompasses not only individuals subject to immediate physical imprisonment, but also those subject to restraints not shared by the public generally that significantly confine and restrain freedom.") (quoting *Mays v. Dinwiddie*, 580 F.3d 1136, 1139 (10th Cir. 2009)).

proceedings against him. (Doc. 3, at 5.) The Court found that *Ex parte Royall* and *Younger* require this Court to decline to interfere in the ongoing state court proceedings in Leavenworth, Washington, and Riley Counties.[2] *See Ex parte Royall*, 117 U.S. 241 (1886); *Younger v. Harris*, 401 U.S. 37 (1971).

The Court found that "even if Petitioner had articulated a plausible ground for habeas relief in his petition, the record now before the Court reflects that *Ex parte Royall* would require this Court to abstain from considering Petitioner's request for habeas relief from his ongoing criminal prosecutions in state court." (Doc. 3, at 7.) The Court also found that it appears that Petitioner has not exhausted his state remedies. *Id.* (citing *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000) ("A habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254.") (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) (requiring state prisoner bringing federal habeas corpus action to show that he exhausted available state remedies)); *see also Knox v. Sharp*, 818 F. Appx. 817, 818 (10th Cir. 2020) (unpublished) ("Although 'no statutory exhaustion requirement applies to petitions filed pursuant to § 2241, it is well-settled that claims raised in § 2241 petitions must be exhausted before a federal court will hear them.'") (quoting *Burger v. Scott*, 317 F.3d 1133, 1144 n.8 (10th Cir. 2003)). The Court ordered Petitioner to show good cause why this case should not be dismissed.

## II. Petitioner's Response

Petitioner filed a response arguing that "the record presents at least a substantial basis to conclude that the state proceedings have not provided an adequate opportunity for meaningful adjudication of the federal constitutional claims and that extraordinary circumstances warrant

---

[2] *See State v. Lacamera*, Case No. LV-2025-CR-000337 (District Court of Leavenworth County, Kansas); *State v. Lacamera*, Case No. WS-2026-CR-000002 (District Court of Washington County, Kansas); *State v. LaCamera*, Case No. RL-2026-CR-000258 (District Court of Riley County, Kansas).

retaining federal jurisdiction rather than dismissing the Petition at Rule 4 screening." (Doc. 4, at 1.) Petitioner acknowledges that his pending criminal proceedings generally fall within the core of *Younger*. He argues that an exception applies because the state proceedings are not adequate. *Id*. at 3.

Petitioner argues that he is not contending that every discrepancy standing alone establishes bad faith, but rather it is cumulative record that shows bad faith. *Id*. at 3–4. Plaintiff claims that the record includes:

> -disputed arrest-warrant dates and returns;
> -multiple warrant-recall documents;
> -discrepancies concerning addresses;
> -disputed failure-to-appear allegations;
> -contemporaneous communications with the court and counsel;
> -recordings concerning the failure-to-appear issue;
> -repeated changes in appointed counsel;
> -counsel's failure to adopt Petitioner's pro se filings;
> -an emergency pro se motion seeking conflict counsel and a stay;
> -evidence concerning counsel's personal review of government stay;
> -disputed descriptions of the underlying investigation;
> -the October 7, 2025 Riley County DNA warrant;
> -the later use of that warrant in January 2026;
> -the identifying number RL-2026-MR-000018;
> -Petitioner's public CaseSearch result showing no record under that number;
> -disputed DNA collection while Petitioner was incarcerated;
> -disputed handling of the DNA swabs;
> -the continuing Washington County prosecution;
> -the State's refusal to resolve Washington County while awaiting Riley proceeding;
> -the subsequent disappearance of Washington County criminal matters from the public CaseSearch portal; and
> -the July 2026 state-court proceeding in which Petitioner was first permitted to proceed pro se and then, immediately after attempting to present his federal writ and requests a stay, was repeatedly characterized as incompetent and subjected to additional restrictions.

*Id*. at 4.

Petitioner has failed to show that his state court proceedings are inadequate. Instead, he seeks the production of evidence that he claims might resolve the factual dispute. For example, Petitioner suggests that body-camera recordings that he has not viewed are "capable of testing the government's characterization of the incident." *Id*. at 4–5. Petitioner states that he is not asking the Court to accept a statement that "there is video somewhere that proves [him] right." *Id*. at 5. Petitioner claims that the video was viewed by his attorney and can "objectively resolve the factual dispute." *Id*. Petitioner then asks for preservation and production of the recording, stating that "[i]f the recording establishes the facts described by Petitioner, that is objective evidence . . . [and] [i]f it does not, the recording will establish that as well." *Id*. Petitioner sets forth a list of recordings, records, and reports that he is requesting and that he would like preserved. *Id*. at 5–7. Petitioner claims that the government possesses the best evidence to resolve the dispute as to *Younger*. *Id*. at 6. Petitioner asks the Court to compare evidence in his criminal cases, stating that he has identified issues. *Id*.

Petitioner also claims that the Riley County DNA warrant is identified as RL-2026-MR-000018, but when he searched that number in the Kansas Judicial Branch CaseSearch system it returned "no records found."[3] *Id*. at 7. Petitioner states that he recognizes that the portal is not the official court record, but argues that "the discrepancy establishes a specific factual question that can be resolved by the original court records." *Id*. Petitioner also points to the appointment of and withdrawal of counsel as demonstrating the difficulty he encountered in presenting his claims. *Id*. at 9–10. He takes issue with the collection of his DNA swabs, arguing that "after collection the swabs were not immediately sealed in the manner Petitioner expected for biological evidence and

[3] Petitioner attaches the warrant as Doc. 4–11. It is a search warrant issued on October 7, 2025. (Doc. 4–11, at 1.) Although it does contain the number "RL2026MR000018", Petitioner has not explained why he believes this number would show up as a separate case in the online CaseSearch system. Because the document contains Petitioner's date of birth and social security number, the Court will direct the Clerk to seal the document.

were instead placed in a black binder." *Id*. at 8. He also disputes a failure to appear determination, arguing that he contacted the court and counsel concerning his inability to attend. *Id*. at 9. He asks this Court to consider the telephone records, recordings, emails, journal entries, and attorney communications. *Id*. He also claims that after his request to proceed pro se was granted in state court, he was then characterized as incompetent. *Id*. at 10–11.

Petitioner claims that there is a speedy trial issue with his Washington County case because the prosecutor stated that she wanted to see what happened in the Riley County case before deciding whether to dismiss the Washington County case. *Id*. at 12. Petitioner recognizes that exclusions may apply, but asks that the State be required to identify exclusion periods.[4] *Id*. Petitioner also claims that his Washington County case no longer appears on the portal, and although he "does not ask this Court to assume that a clerk, judge, prosecutor, or other state actor intentionally deleted or concealed the records," he states that "[t]he official record can establish what was actually filed."[5] *Id*. at 12–13. Regarding exhaustion, Petitioner seemingly acknowledges that he has not exhausted and asks this Court to decide whether exhaustion is unavailable or futile. *Id*. at 14–15.

## II. Discussion

The Court finds that Petitioner has failed to show good cause why this Court should not abstain under *Ex parte Royall* and *Younger*. Petitioner's claims relate to three ongoing state criminal proceedings against him. Federal courts generally should not exercise their power to

[4] A June 4, 2026 Order was entered in the Washington County case, stating that at the June 3, 2026 preliminary hearing, "the parties relay[ed] to the Court that they continue to work towards a resolution and request additional time for the same." *State v. Lacamera*, Case No. WS-2026-CR-000002 (District Court of Washington County, Kansas). Petitioner appeared in person at the hearing and with court-appointed counsel. *Id*.

[5] The Court notes that although the Washington County case does not appear based on a search under Petitioner's name, the Court was able to locate the case on the portal by entering the case number "WS-2026-CR-00002". *See* https://casesearch.kscourts.gov/Home/CaseDetail (last visited Sept. 2, 2026). The docket reflects that an evidentiary hearing is scheduled for September 28, 2026.

discharge a person being detained by a state for trial on a state crime, even where the person alleges that the detention is unconstitutional. In 1886, the United States Supreme Court described some very limited circumstances in which such intervention might be proper, such as when the person is in custody for an allegedly criminal act that was required by federal law or federal court order, when the person is a citizen of a foreign country and is in state custody for an allegedly criminal act done under the authority of that foreign country, when the matter is urgent and involves the United States' relations with foreign nations, or when there is some reason why the state court may not resolve the constitutional question in the first instance. *See Ex parte Royall*, 117 U.S. 241, 251–52 (1886). Otherwise, federal courts must abstain from interfering with the process of state courts. *Id.* at 252 (stating that federal courts' non-interference with state courts "is a principle of right and law, and therefore of necessity").

Nearly a century later, the United States Supreme Court reaffirmed that principles of comity dictate that a federal court generally should not intervene in ongoing state criminal proceedings unless "irreparable injury" is "both great and immediate." *See Younger v. Harris*, 401 U.S. 37, 46 (1971). Under *Younger*, federal courts must abstain when "(1) the state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to present the federal constitutional challenges." *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997).

More recently, the Tenth Circuit explained that "*Younger* and *Ex parte Royall* are related doctrines." Both "are based upon 'comity, that is, a proper respect for state functions'" and

> stand for "the requirement that special circumstances must exist before the federal courts exercise their habeas corpus, injunctive, or declaratory judgment powers to stop state criminal proceedings." *Younger* addressed a federal court's equitable power to issue an injunction enjoining state proceedings, while *Ex parte Royall* . . . involved a request for habeas relief.

*Smith v. Crow*, 2022 WL 12165390, *2 (10th Cir. Oct. 21, 2022) (unpublished order denying certificate of appealability) (quoting *Dolack v. Allenbrand*, 548 F.2d 891, 893 (10th Cir. 1977)).

Even liberally construing the pro se Petition, however, Petitioner does not allege that he has been criminally charged for acts done under the authority of a federal law or foreign government or that his case involves foreign relations, as would remove the case from the circumstances that require abstention under *Ex parte Royall*. Moreover, the three conditions in *Younger* are satisfied with respect to Petitioner's current criminal cases in state court. The criminal cases against Petitioner are ongoing; the State of Kansas has an important interest in prosecuting crimes charging the violation of Kansas laws, *see In re Troff*, 488 F.3d 1237, 1240 (10th Cir. 2007); and the state courts provide Petitioner the opportunity to present his challenges, including any federal constitutional claims, whether in the district court or, if necessary, on appeal or in further proceedings, *see Capps v. Sullivan*, 13 F.3d 350, 354 n.2 (10th Cir. 1993). If these three circumstances for *Younger* abstention are present—as they are in this case—federal abstention is mandatory unless extraordinary circumstances require otherwise. *Brown ex rel. Brown v. Day*, 555 F.3d 882, 888 (10th Cir. 2009) (quoting *Amanatullah v. Co. Bd. of Med. Examiners*, 187 F.3d 1160, 1163 (10th Cir. 1999)).

Petitioner claims that his state court proceedings do not provide an adequate forum for hearing his claims. Extraordinary circumstances that warrant federal intervention in ongoing state criminal proceedings include cases "'of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction.'" *Amanatullah*, 187 F.3d at 1165. However, a petitioner asserting such circumstances must make "'more than mere allegations of bad faith or harassment.'" *Id.*

Petitioner's response fails to show proven harassment or bad faith. Rather, he asks this

Court to review the state court records to determine if there might be instances of irregularities or disputed facts that support a cumulative finding of bad faith. Plaintiff has not shown that extraordinary circumstances provide an exception to *Younger* abstention. Two varieties of "extraordinary circumstances" exist: "(1) where the plaintiff makes a showing of bad faith or harassment by state officials responsible for the prosecution or enforcement action and (2) where the state law or regulation to be applied is flagrantly and patently violative of express constitutional prohibitions." *Brown*, 555 F.3d at 888, n.4 (citations and internal quotations omitted). However, a petitioner has a "heavy burden" to overcome *Younger* abstention by setting forth "more than mere allegations of bad faith or harassment." *Amanatullah*, 187 F.3d at 1165 (citation omitted). The Tenth Circuit has held that "'unless state law clearly bars the interposition of the federal statutory and constitutional claims,' a plaintiff typically has 'an adequate opportunity to raise federal claims in state court.'" *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019) (citation omitted). *See also Kabutu v. Short*, 2022 WL 3010620, *2 (10th Cir. July 29, 2022) (unpublished) ("As a general matter, Kansas state courts provide an adequate forum for the resolution of constitutional claims incident to a state criminal prosecution absent a clear state bar to the assertion of such claims.").

Petitioner has not shown good cause why abstention is not required under *Ex parte Royall*. In addition, none of the exceptions to *Younger* abstention apply, making abstention mandatory. Even where *Younger* abstention is not mandatory, courts may conclude "that abstention [is] appropriate under *Colorado River*'s principles of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *CNSP, Inc. v. City of Santa Fe*, 753 F. App'x 584, 587 (10th Cir. 2018) (unpublished) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (brackets and internal

quotation marks omitted); *see D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 n.13 (10th Cir. 2013) (recognizing that "[i]n the strictest sense, the *Colorado River* doctrine is not an abstention doctrine at all. Rather, it is a judicially crafted doctrine of efficiency that arose to fill a gap in the federal courts' existing inventory of abstention principles.")).

Petitioner has failed to show good cause why *Ex parte Royall* and *Younger* do not require this Court to decline to interfere in the ongoing state court proceedings in Leavenworth, Washington, and Riley Counties. Therefore, even if Petitioner had articulated a plausible ground for habeas relief in his petition, the record now before the Court reflects that *Ex parte Royall* would require this Court to abstain from considering Petitioner's request for habeas relief from his ongoing criminal prosecutions in state court. Therefore, the Court dismisses this habeas action.

**III. Emergency Motion for Immediate Temporary Stay of Probation Enforcement (Doc. 5)**

Petitioner claims that he has a probation-violation hearing scheduled for September 2, 2026, and asks the Court to "prevent additional probation consequences while this Court decides the federal petition and the pending stay request." (Doc. 5, at 1, 3.) "Petitioner requests temporary suspension of enforcement of probation restrictions to the extent they prevent legitimate interstate travel required for employment and operation of his mobile scrap and electronic-waste business." *Id*. at 3. Petitioner seeks in the alternative to have the Court expedite consideration of his stay request. *Id*. at 4–5.

Petitioner filed his motion on September 1, 2026. Therefore, the Court is giving the motion expedited consideration. However, the Court is denying the relief requested in the motion. The Court is dismissing this habeas action based on the abstention doctrines set forth above. Therefore, Petitioner's request to have this Court stay his ongoing criminal proceedings or to stay certain probation restrictions is denied.

**IT IS THEREFORE ORDERED** that the Petition for habeas relief under 28 U.S.C. § 2241 is **dismissed.**

**IT IS FURTHER ORDERED** that Petitioner's Emergency Motion for Immediate Temporary Stay of Probation Enforcement (Doc. 5) is **denied.**

**IT IS FURTHER ORDERED** that the Clerk is directed to seal Doc. 4–11.

**IT IS SO ORDERED.**

**Dated September 2, 2026, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**